IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MAGALI DÍAZ-FIGUEROA,

        Plaintiff

           v.                     CIVIL NO. 08-1302 (JP)

RICOH PUERTO RICO, INC.,

        Defendant

## OPINION AND ORDER

Before the Court is Defendant Ricoh Puerto Rico, Inc.'s ("Ricoh" or "Defendant") motion for summary judgment (No. 55), and Plaintiff Magali Díaz-Figueroa's ("Díaz" or "Plaintiff") opposition thereto (No. 65). Plaintiff Díaz filed the instant lawsuit pursuant to Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; and the Equal Pay Act ("EPA"), 29 U.S.C. 206(d), alleging that Defendant Ricoh engaged in discriminatory conduct toward Plaintiff by granting preferential treatment within the company to male and younger salespeople. Plaintiff also brings supplemental claims pursuant to P.R. Laws Ann. tit. 29, § 146 *et seq.* ("Law 100"); P.R. Laws Ann. tit. 29, § 1321 *et seq.* ("Law 69"); P.R. Laws Ann. tit. 29, § 194 *et seq.* ("Law 115"); and Article 1802 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, § 5141.

CIVIL NO. 08-1302 (JP)            -2-

Defendant Ricoh moves for summary judgment, arguing that the evidentiary record creates no genuine issues of material fact as to Plaintiff's Title VII, ADEA, or EPA claims.   For the reasons stated herein, Defendant's motion for summary judgment (**No. 55**) is hereby **GRANTED**.

I.   **MATERIAL FACTS NOT IN GENUINE ISSUE OR DISPUTE**:

The following facts are deemed uncontested by the Court because they were included in the motion for summary judgment and opposition and were agreed upon, or they were properly supported by evidence and not genuinely opposed.

1.   Defendant Ricoh is one of the leading manufacturers of photocopiers, printers, word processors, digital cameras and other office equipment.   Ricoh is a subsidiary of the Ricoh Corporation.   Ricoh is dedicated to the sale and promotion of its photocopiers and other office equipment in Puerto Rico.

2.   Plaintiff Díaz was born on March 17, 1965.   She commenced her employment with Ricoh on June 4, 1997.   Since then, she has been and continues to be a Ricoh employee.   There have been no interruptions in her employment with the Company.

3.   Mr. Ramón Mártir, Major Account Manager-Government Accounts ("Mártir"), was Díaz's direct supervisor from September 1, 2003 until January 2007.   At that time, Díaz

CIVIL NO. 08-1302 (JP)            -3-

was transferred from the Government Sales Division ("GSD") to the Private Accounts Division, and Mr. Manolo Santos, Major Account Manager-Private Accounts ("Santos"), became her direct supervisor.   Santos has been Díaz's direct supervisor since then.

4.   All of Ricoh's GSD Sales Representatives' compensation is governed by a Sales Compensation Plan ("SCP").   Among other things, the SCP establishes the Sales Representative's basic compensation, their sales quota for the Fiscal Year ("FY"), commission schedules, bonuses and incentives, and other benefits the Sales Representative may be eligible for if they reach certain pre-established quotas and milestones.   Further, the SCP also provides a list of all of the clients assigned to the Sales Representative during the upcoming FY.   A SCP is delivered to each Sales Representative each FY.   Ricoh's FY runs from April 1 to March 31 of the following year.   Sales Representatives may present objections to their SCPs in writing, if they wish to do so.

5.   As a GSD Sales Representative, Díaz was responsible for selling Ricoh's equipment and providing services to her assigned government clients.

6.   Ricoh management assigns client accounts to its Sales Representatives each fiscal year.

CIVIL NO. 08-1302 (JP)          -4-

7.    In 2006, Ricoh implemented a Performance Management System to evaluate its Sales Representatives' performance. As part of the system, each Sales Representative meets with her supervisor to discuss the preceding year's Performance Management System results. Further, management discuss with the Sales Representatives their sales plan and strategies for the upcoming FY. If the employee disagrees with the Performance Management System, he or she has the opportunity to object in writing. The Sales Representative's Performance Management System rating is considered when establishing each employee's base salary for the upcoming FY.

8.    For at least a decade, Díaz has known, understood, and agreed to the SCP, as well as its terms, conditions, and provisions. Díaz has never been demoted, suspended or terminated from her employment as a result of her sales performance.

9.    In December of 2004, Díaz was put on a Performance Improvement Plan. Although she was approximately one month pregnant at the time, Díaz has admitted that Mártir was not aware of her pregnancy at the time and that her pregnancy was not noticeable. Díaz first notified Ricoh's management of her pregnancy sometime between late December of 2004 and early January 2005.

CIVIL NO. 08-1302 (JP)            -5-

10.  Díaz gave birth to her son on August 30, 2005. She commenced her maternity leave that same day and returned to work twelve weeks later, following eight weeks of maternity leave and four weeks of vacation. When Díaz returned from maternity leave, she was reinstated in her GSD Sales Representative position, with the same supervisor, compensation package, and client accounts. Ricoh does not have any information that would indicate that Díaz has been pregnant again since then.

11.  Ricoh's management proportionally reduced Díaz's sales quota for the FY 2005-2006 to reflect the two months she enjoyed her maternity leave. Thus, her initial quota of $660,000 for FY 2005-2006, was reduced by $110,000 to $550,000.

12.  The FY in which Díaz was pregnant (FY 2005-2006), she achieved 100% of her sales quota. She also received a 20% salary increase (from $26,500 to $31,500), which was implemented in two stages.

13.  On October 31, 2006, Díaz received a performance memorandum for failing to accomplish her sales objectives. She had not achieved any sales in the months of April, June, August, and October of 2006. She had only obtained 19% of her quota during her first six months of the fiscal year. On or around the time Díaz received this memorandum

CIVIL NO. 08-1302 (JP)          -6-

all other Sales Representatives with comparable sales performance problems received similar memorandums.

14. Díaz also failed to make any sales in the months of November and December of 2006. With only three months remaining in the fiscal year (January to March 2007), Díaz's sales achievement percentage had dropped to 12% of her assigned quota. She would have to sell $395,000.00 in the remaining three months to catch up.

15. On December 26, 2006, Díaz received a memorandum summarizing her sales performance during the first nine months of FY 2006-2007 (April to December 2006). The memorandum stated that her performance did not meet Ricoh's expectations for her position. Due to the critically low level of her performance, Mártir notified Díaz that management: (1) would monitor closely her sales pipeline; (2) asked her to submit a weekly activity schedule; (3) report to work at 8:30 a.m. and 4:30 p.m. from Monday through Friday; and (4) requested that she submit copies of all the proposals, activity and appointments she had during the previous week every Friday. All of the Sales Representatives that were in comparable situations received a similar memorandum on or around December 26, 2006.

CIVIL NO. 08-1302 (JP)          -7-

16.   On January 3, 2007, Díaz hand delivered several letters to Ricoh's human resources manager Julio Alonso ("Alonso"), stating her objections to her performance objectives, her accounts, and her quota.  Although the letters were delivered on January 3, they were inexplicably dated December 5, and December 28.  She did not allege in any of her letters that she felt she was being discriminated against because of her age, gender, or her 2005 pregnancy.

17.   In the letter dated December 5, 2006 and hand delivered on January 3, 2007, Díaz complains for the first time about the way her direct supervisor treated her during a meeting they had on April 18, 2005, while she was pregnant. Further, she asked for what she deems are better accounts because she had more experience than other GSD Sales Representatives, and that employees with less experience were handling better accounts.  Díaz did not allege in her letter that she felt this was due to her age, her gender or her 2005 pregnancy.

18.   As a result of performance memoranda that Díaz received in October and December, 2006, Díaz was not put on a performance improvement plan, suspended, terminated, or demoted.  Said memoranda also did not take away client accounts from Díaz, raise her sales quota, or reduce her salary.

CIVIL NO. 08-1302 (JP)          -8-

19. On January 9, 2007, Díaz presented a discrimination charge before the Antidiscrimination Unit of the Puerto Rico Department of Labor and Human Resources ("ADU") and the Equal Employment Opportunity Commission ("EEOC").

20. Díaz was 41 years old on the date she filed her ADU/EEOC charge.

21. On January 13, 2007, Díaz visited a psychiatrist for the first time.

22. In May 2007, Díaz amended her EEOC charge.

23. On December 14, 2007, the EEOC dismissed Díaz's charge in its entirety and found that, based on their investigation, the agency was unable to conclude that the information obtained from Plaintiff established a violation of the statutes.

24. Díaz has admitted that sales in the industry she works in are cyclical.

25. Díaz has admitted that she does not know whether her sales quotas were higher or lower than those assigned to other GSD Sales Representatives, including her male peers and those that are younger than her.

26. In three out of the last four fiscal years preceding the complaint (FY 2004-2005; 2005-2006; & 2006-2007), Díaz was assigned a sales quota below or equal to all other GSD Sales Representative. For instance, in FY 2004-2005, Díaz

CIVIL NO. 08-1302 (JP)          -9-

     had an assigned total quota of $660,000.  In that FY, Mr. Juan Verdejo (male and younger than her) and Mr. Gilberto Cedeño (male and older than her) had the same assigned total quota.

27.  Like Díaz, male and/or younger GSD Sales Representatives have been unable to achieve their assigned total quota. For instance, in FY 2007-2008, Gilberto Cedeño and José Cintrón, both of whom are male were not able to achieve 100% of their sales quota.  In FY 2006-2007, male GSD Sales Representatives Gilberto Cedeño, José Cintrón, Luis Mendoza, Rafael Rodríguez and Juan Sánchez achieved sales percentages lower than 70%.  Rafael Rodríguez, who is the youngest GSD Sales Representative (39 years of age; 3 years younger than Díaz at the time), achieved a sales percentage of only 28.1%, compared to Díaz's 24.8%.

28.  In the four FYs preceding Díaz's complaint, several male GSD Sales Representatives were unable to meet at least 85% of the sales quota assigned to them: FY 2004-2005: (1) José L. Otero, 59.7%; FY 2005-2006: (1) José Cintrón, 40.8%, (2) José L. Otero, 50%, (3) Rafael Rodríguez, 50.8%, and (4) Juan Verdejo, 49.6%; FY 2006-2007: (1) Gilberto Cedeño, 48.9%, (2) José Cintrón, 55.2%, (3) Luis Mendoza, 32.4%, (4) Rafael Rodríguez, 28.1%, (5) Juan Sánchez, 69.4%; and FY 2007-2008: José

CIVIL NO. 08-1302 (JP)          -10-

Cintrón, 41.0%.   Of these GSD Sales Representatives, Gilberto Cedeño, José Cintrón, and José L. Otero have the same age or have less than a two year age difference with Díaz.

29.  Díaz has admitted that she does not know the salary earned by other GSD Sales Representatives, including her male and/or younger peers, during the years relevant to the complaint.

30.  The base compensation of GSD Sales Representatives at Ricoh during the two years immediately preceding the filing of this complaint has ranged from $28,087 to $37,852 (earned by Mrs. Evelyn Torres in FY 2007-2008, who is a year older than Díaz).  In FY 2006-2007, Díaz's base salary was $3,413 higher than José L. Otero's, who is male and one year younger than her. Further, in both FYs, Gilberto Cedeño, a male GSD Sales Representative who is a year older than Díaz, has earned the same base salary as Díaz.

31.  During the four years that preceded Díaz's complaint, Díaz's base salary was equal to or higher than some of her male and/or younger peers (FY 2004-2005: same salary as (1) Juan E. Verdejo (younger) and (2) Rafael Rodríguez (younger); FY 2005-2006: same salary as José L. Otero (younger); FY 2006-2007: (1) same salary as Gilberto

CIVIL NO. 08-1302 (JP)          -11-

        Cedeño (one year older than Díaz), and (2) higher salary than José L. Otero (younger); and FY 2007-2008: same salary as (1) Gilberto Cedeño, (2) José L. Otero, and (3) Katsi Jaramillo (13 years younger than Díaz)).

32.  During the four years immediately preceding the filing of the complaint, Mrs. Evelyn Torres, a female GSD Sales Representative that is older than Díaz, has consistently earned the highest base salary within the GSD. Mrs. Torres is older than Díaz by less than one year.

33.  Díaz has admitted that Iniabeliz Álvarez and Nélida Ríos (who is 17 years older than Díaz; 60 years old in FY 2007-2008), have achieved sales of over $1,000,000 or close to a million in one year. (FY 2004-2005: Evelyn Torres sold $1,087,963; FY 2005-2006: Ineabeliz Álvarez sold $1,444,601; FY 2007-2008: Nélida Ríos sold $993,802).

34.  Plaintiff identified three males as the big earners in Ricoh: José L. Otero, Juan Manuel Sánchez and Francisco Rivera.

35.  For at least one out of the four years preceding Plaintiff's complaint, her compensation was greater than at least one of the "top earners," Juan M. Sánchez. (FY 2007-2008: Plaintiff's sales: $755,709; Plaintiff's compensation: $97,679; Sánchez's sales: $787,536; Sánchez's compensation: $92,300).

CIVIL NO. 08-1302 (JP)          -12-

36.   In FY 2007-2008, Nélida Ríos, a female, and the oldest GSD employee, was the third top seller, earned the third highest compensation, and also earned more than Sánchez. (FY 2007-2008: Ríos' compensation: $115,884).  She also topped two other male employees: Gilberto Cedeño and José Cintrón.

37.   In FY 2006-2007, Iniabeliz Álvarez also earned more than Juan Sánchez, and earned the third highest compensation that year.  She also earned higher compensation than at least five of her male peers: Gilberto Cedeño, Luis Mendoza, Rafael Rodríguez, José Cintrón and Juan Sánchez.

38.   In FY 2005-2006, Evelyn Torres, another female, also older than Plaintiff, earned more than José L. Otero and Juan Sánchez, two alleged top earners in Ricoh.  (FY 2005-2006: Torres: $127,831;  Otero: $81,803;  Sánchez: $107,029).  Also, that year, she earned more than seven of her male coworkers: José L. Otero, José Cintrón, Gilberto Cedeño, Luis Mendoza, Rafael Rodríguez, Juan Manuel Sánchez, and Juan Verdejo.

39.   During FY 2004-2005, Evelyn Torres received higher compensation than two alleged top earners, José Otero, and Juan Sánchez.  That year, she sold $1,087,963 and her compensation was $144,567.  Meanwhile, José L. Otero only sold $537,025, and his compensation was $133,731.  Another

CIVIL NO. 08-1302 (JP)          -13-

alleged top earner, Juan Sánchez, only sold $735,616, and his compensation was $112,899. That year, Evelyn Torres surpassed five of her male peers: Juan Verdejo, Juan Sánchez, Rafael Rodríguez, Luis Mendoza, and Gilberto Cedeño.

40. During the four years immediately preceding the filing of this complaint, some of Díaz's female peers have achieved more than a 100% of their sales quota, and have attained either the second or third highest total compensation amounts for each year. For instance, during FY 2004-2005, Evelyn Torres achieved the highest sales quota and the second highest total compensation. Also, that FY, Mrs. Torres earned a total compensation higher than that earned by six male GSD Sales Representatives: Mr. Cedeño, Mr. Mendoza, Mr. Otero (younger than Díaz), Mr. Rodríguez (the second youngest GSD Sales Representative then), Mr. Sánchez and Mr. Verdejo (the youngest GSD Sales Representative then).

41. During FY 2005-2006, Iniabeliz Álvarez (3 years older than Díaz) achieved the highest percentage of her quota, and Evelyn Torres (same age as Díaz) had the second highest compensation. Also, that year, Mrs. Torres earned a higher total compensation than four male GSD Sales Representatives: Mr. Cintrón (one year older than Díaz),

CIVIL NO. 08-1302 (JP)          -14-

Mr. Mendoza, Mr. Otero (younger than Díaz), and Mr. Verdejo (the youngest GSD Sales Representative then).

42. During FY 2006-2007, Iniabeliz Álvarez (3 years older than Díaz) achieved the second highest percentage of her sales quota and the third highest total compensation. Also, that year, Álvarez's total compensation surpassed that earned by five male GSD Sales Representatives (Mr. Cedeño (one year older than Díaz), Mr. Cintrón (one year older than Díaz), Mr. Mendoza, Mr. Rodríguez (younger than Díaz) and Mr. Sánchez).

43. Although Díaz's sales quota was equal to or lower than the quotas assigned to all other sales representatives in FY 2006-2007 ($450,000), she only achieved 24.8% of said quota.

44. During FY 2006-2007, Díaz earned compensation of $32,350 beyond her base salary, equal to 29% of the sales she made that year. José L. Otero (between one and two years younger than Díaz), who earned the highest total compensation that FY, non-salary compensation of $139,268, which is equal to 9.3% of the sales he made that year.

45. During FY 2007-2008, Díaz achieved the second highest percentage of her sales quota, and the fourth highest compensation. In that same FY, Nélida Ríos, another female GSD Sales Representative, who was sixty years old at the

CIVIL NO. 08-1302 (JP)          -15-

time, earned the third highest compensation.  That FY three male employees (Mr. Cedeño (two years older than Díaz), Mr. Cintrón (two years older than Díaz), and Mr. Sánchez) earned compensation lower than their female peers.

46.  For at least three out of the four years predating the complaint, the top performer has been the top earner. (FY 2004-2005, Francisco Rivera had the highest sales, $1,636,496, and earned the highest compensation, $183,197; FY 2006-2007, José L. Otero had the highest sales, $1,502,263, and earned the highest compensation, $167,355; FY 2007-2008, Francisco Rivera had the highest sales, $2,309,774, and earned the highest compensation, $205,611).

47.  During FY 2007-2008 Díaz achieved 126% of her sales quota for that year and had the fourth highest compensation.

48.  Although Plaintiff complained that some of her accounts were given to a younger male employee (Juan Verdejo) in FY 2005-2006, she stated in her deposition that Verdejo later complained that some of these accounts had "no potential."

49.  In FY 2005-2006, before management redistributed some of her accounts to Verdejo, Díaz had twenty-five client accounts assigned to her.  In FY 2006-2007, after the exchange, that number rose to twenty six, one more account than the year before.

CIVIL NO. 08-1302 (JP)          -16-

50.  During the four years immediately preceding the filing of
     this complaint, Ricoh's GSD had from ten to twelve Sales
     Representatives.  During that time, Díaz has been the third
     or fourth youngest Sales Representative in the GSD.

51.  In FY 2007-2008, Díaz was assigned a total of forty-four
     client accounts, that is, eighteen more than the year
     before.  Díaz initially complained that some of those
     forty-four accounts, particularly the newly added accounts,
     had no potential.  However, in that FY, Díaz achieved 126%
     of the quota assigned to her for that FY.

52.  During FY 2004-2005, Plaintiff's sales quota was lower than
     or equal to those assigned to all other GSD sales
     representative that year.  During said year, Plaintiff
     achieved only 41.4% of her sales quota.

53.  Born July 22, 1977, Katsy Jaramillo ("Jaramillo") is the
     youngest GSD Sales Representative at Ricoh PR.

54.  Jaramillo commenced work at Ricoh PR in March 19, 2007, two
     weeks prior to the start of FY 2007-2008.  Ricoh hired her
     in response to the need for a bigger sales force and the
     poor performance of a vast majority of the GSD sales
     representatives for years preceding her hiring (that year
     8 out of 11 GSD sales representatives failed to meet their
     sales quotas).  When Jaramillo was hired, Plaintiff had
     just turned forty-two years old.

CIVIL NO. 08-1302 (JP)          -17-

55.  Jaramillo's total compensation when she started working was
     $59,134, that is, only 60% of Díaz's compensation
     ($97,679).

56.  The ages of the decision makers involved in this case, to
     wit, Alonso, Mártir, and Jesús Santiago, are 51, 35, and
     47, respectively.

57.  Ricoh has always had corporate policies and procedures to
     manage discrimination, harassment and retaliation claims.
     They are published in Ricoh's Employee Manual.  These
     policies ban discrimination and provide channels for
     employees to channel any type of workplace complaint.
     Additionally, Ricoh posts Equal Employment Opportunity
     posters advising its employees of their rights under local
     and federal discrimination laws in its web portal, bulletin
     boards, employee lounges, cafeterias and other prominent
     places throughout the office.  Plaintiff received a copy of
     this policy on July 24, 2003.

58.  During FY 2007-2008, Plaintiff was the third youngest sales
     representative at the GSD.

59.  In the four years preceding the filing of this complaint,
     a male and/or younger than Díaz GSD Sales Rep. earned the
     highest compensation.  Rivera (male) earned the highest
     total compensation for FYs 2004-05 ($183,197.60), 2005-06
     ($172,629) and 2007-08 ($205,611), while Otero earned the

CIVIL NO. 08-1302 (JP)           -18-

highest total compensation for FY 2006-07 ($167,355). Only in one year (FY 2005-06) out of the four years preceding this complaint the top performer was a female, Álvarez. Although Álvarez was the top performer, she ranked sixth in total compensation with four males (Rivera, Rodríguez, Cedeño and Sánchez) receiving higher total compensation even though Álvarez had the best sales performance.

## II. __LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT__:

Summary judgment serves to assess the proof to determine if there is a genuine need for trial. <u>Garside v. Osco Drug, Inc.</u>, 895 F.2d 46, 50 (1st Cir. 1990). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, viewed in the light most favorable to the nonmoving party, reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>see also</u> <u>Zambrana-Marrero v. Suárez-Cruz</u>, 172 F.3d 122, 125 (1st Cir. 1999) (stating that summary judgment is appropriate when, after evaluating the record in the light most favorable to the non-moving party, the evidence "fails to yield a trial worthy issue as to some material fact"); <u>Goldman v. First Nat'l Bank of Boston</u>, 985 F.2d 1113, 1116 (1st Cir. 1993); <u>Canal Ins. Co. v. Benner</u>, 980 F.2d 23, 25 (1st Cir. 1992). The Supreme Court has stated that "only disputes

CIVIL NO. 08-1302  (JP)          -19-

over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  In this way, a fact is material if, based on the substantive law at issue, it might affect the outcome of the case.  See Mack v. Great Atl. and Pac. Tea Co., Inc., 871 F.2d 179, 181 (1st Cir. 1989).

On a summary judgment motion, the movant bears the burden of "informing the district court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2253, 91 L. Ed. 2d 265 (1986).  Once the movant meets this burden, the burden shifts to the opposing party who may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue of material fact for trial.  See Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553; Goldman, 985 F.2d at 1116.

III. **ANALYSIS**:

Defendant Ricoh moves for summary judgment on Plaintiff's Title VII, ADEA, and EPA claims.  Ricoh also requests that the Court decline to exercise jurisdiction over Plaintiff's Puerto Rico law

CIVIL NO. 08-1302 (JP)          -20-

claims, and dismiss said claims without prejudice.  The Court will now consider Defendant's arguments in turn.

### A.   Plaintiff's Title VII Claims

Plaintiff alleges that Defendant Ricoh violated Title VII by subjecting her to discrimination on the basis of her sex and pregnancy.  Defendant argues that the record shows, beyond any genuine material dispute, that Plaintiff has not provided evidence sufficient to support her Title VII discrimination claim.

Title VII protects against workplace discrimination on the basis of certain protected categories, including sex.  42 U.S.C. § 2000e *et seq.*  The Pregnancy Discrimination Act of 1978 specifies that the scope of Title VII protection against sex discrimination includes discrimination on the basis of pregnancy.  42 U.S.C. § 2000e(k); Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir. 2000).

In the absence of direct evidence of discrimination, a Title VII claim for discrimination on the basis of sex or pregnancy must be examined according to the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  The McDonnell Douglas framework consists of the following three steps.  First, the plaintiff must make a *prima facie* showing that: (a) she is a member of a protected class; (b) her job performance was satisfactory; (c) she suffered an adverse employment action; and (d) the defendant continued to have her duties performed by a comparably qualified

CIVIL NO. 08-1302 (JP)          -21-

person.  Second, if the plaintiff makes a successful *prima facie* case, the defendant must then offer a legitimate, nondiscriminatory reason for the adverse employment action.  Third, if the defendant offers an alternative reason, the burden then shifts back to the plaintiff to show that the proffered nondiscriminatory motive is a mere pretext.  Id. at 802.

### 1. Protected Class

In the instant case, there is no dispute as to the first element of Plaintiff's Title VII *prima facie* showing – Plaintiff was a member of a protected class because of her pregnancy and because she is female.

### 2. Plaintiff's Job Performance

With regard to the second element of Plaintiff's *prima facie* case, Defendant argues that Díaz did not perform her job satisfactorily.  Specifically, Defendant Ricoh argues that Plaintiff's sales were inconsistent and at times well below expectations.  Defendant notes that at one point, in December 2006, Plaintiff's sales achievement fell as low as 12% of her assigned quota.  Defendant also alleges that Díaz gave away merchandise to a client without prior management approval, and failed to follow

CIVIL NO. 08-1302 (JP)          -22-

Ricoh's policy with regard to the circumstances under which the company will agree to buy out a customer's preexisting contract.[1]

The undisputed evidence shows that Díaz's sales achievement was inconsistent during the years preceding her discrimination claim. For the 2004-2005 fiscal year, Díaz reached 41.4% of her sales quota. During 2005-2006 she obtained 99.8% of her quota, and during 2006-2007 she sold only 24.8% of her quota.  The parties disagree as to the reasons for Díaz's sales record.  While poor performance by the salesperson may of course be a significant factor leading to low sales numbers, other factors outside of the salesperson's control are also relevant in the context of an industry such as office equipment sales.  Companies often do not replace photocopiers and related equipment each year.  Thus, sales may be affected by the normal cycle of the client's needs.

Although Díaz's sales achievements were clearly not stellar or highly reliable, the evidence in the record does not establish beyond genuine dispute that she failed to provide satisfactory job performance.  Díaz argues that the accounts she was given lacked the potential for high sales.  In addition, Plaintiff contends that the allegations regarding her violation of the company's buyout policy

---

1.   Ricoh sometimes arranges a "buyout" with customers who have preexisting contracts with a competitor.  Under the buyout arrangement, Ricoh assumes the costs of any expenses or penalties that the customer incurs as a result of the cancellation of the prior contract.  Ricoh alleges that it has a 2 - 1 rule for buyouts, meaning that Ricoh only offers a buyout when the proceeds to be gained from the new contract are at least double the costs that will be assumed due to the cancellation.

CIVIL NO. 08-1302 (JP)          -23-

are unfounded because the 2 - 1 rule cited by Defendants is a new rule that Ricoh formalized after the incident in question.  The Court finds that although Díaz would have an uphill battle in seeking to convince a jury that her job performance was satisfactory, the evidence is not so one-sided as to permit a finding on summary judgment that Plaintiff fails on this element of the Title VII *prima facie* case for gender and pregnancy discrimination.

### 3.   Adverse Employment Action

As to the third element of the *prima facie* showing, Defendants argue that Plaintiff has failed to raise even a genuine factual issue as to whether she was subjected to an adverse employment action.  In order to constitute an adverse employment action under Title VII, an employer's action must materially change the conditions of the plaintiff's employment.  Gu v. Boston Police Dept., 312 F.3d 6, 14 (1st Cir. 2002).  Material changes include "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." Id. (quoting Hernández-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998)).

Plaintiff argues that she was subjected to the following adverse employment actions: (1) redistribution of accounts so that she received accounts with little or no sales potential; (2) manipulation of quotas in a manner that made Díaz's sales targets more difficult to achieve; (3) payment of a salary lower than that of similarly

CIVIL NO. 08-1302 (JP)            -24-

situated male employees; and (4) yelling directed at Plaintiff by supervisor Ramón Mártir ("Mártir").

With regard to the distribution of accounts and assignment of quotas and salaries, the data in the evidentiary record show that Plaintiff has failed to raise a material factual issue as to whether said practices constituted adverse employment actions.   On the contrary, the raw numbers show clearly that Ricoh assigned accounts, quotas, and salaries in a way that was at least equitable, and possibly quite favorable to Plaintiff.   During the four years preceding Plaintiff's complaint, Plaintiff's base salary was equal to or higher than the base salaries of some of her male and/or younger peers.   In fiscal year 2007-2008, the year after Plaintiff's pregnancy, she was assigned eighteen more accounts than the preceding year.   Although Plaintiff alleges that she was given accounts with poor sales potential, and unreachable quota levels, her sales achievement during 2007-2008 reached 126% of her quota.   Plaintiff has not been terminated or demoted.   Rather, she has been given the tools to succeed, as indicated by her 2007-2008 performance. Overall, the evidence regarding Plaintiff's compensation, quotas, and account distribution, does not support a finding that Plaintiff was subjected to an adverse employment action in the form of an unfavorable change in any of these areas.

With regard to Plaintiff's allegation that she faced an adverse employment action because her supervisor Mártir yelled at her,

CIVIL NO. 08-1302 (JP)          -25-

Plaintiff has also failed to submit sufficient evidence to support her conclusion.  The United States Court of Appeals for the First Circuit has established clearly that "[w]ork places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." Gu, 312 F.3d at 14 (quoting Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996)).  Even viewing the facts in the light most favorable to Plaintiff, she has alleged only that Mártir yelled at her during certain meetings.  Plaintiff has not described how the alleged unkind words rose to the level of severity or pervasiveness necessary to be construed as harassment constituting an adverse employment action. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) ("simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.") (internal quotations omitted).

In the absence of evidence that would permit a jury to find an adverse employment action, Plaintiff cannot succeed in demonstrating the *prima facie* showing required for a Title VII claim of discrimination on the basis of sex or pregnancy.  Accordingly, the Court will grant summary judgment for Defendant on Plaintiff's Title VII claim.

CIVIL NO. 08-1302  (JP)          -26-

### B.   Plaintiff's ADEA Claim

Defendant Ricoh also moves for summary judgment on Plaintiff's ADEA claim, arguing that the factual record reveals, beyond any genuine material dispute, that Plaintiff's ADEA claim must fail. Plaintiff Díaz argues that she was subjected to discrimination on the basis of her age because Ricoh assigned better accounts to younger salespeople and failed to compensate Plaintiff as well as younger salespeople.

The ADEA states that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  In order to prevail in a lawsuit under the ADEA, the plaintiff's age must actually have played a role in the employer's decision-making process and have had a determinative or motivating influence on the outcome.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141, (2000); Hoffman v. Applicators Sales & Serv., Inc., 439 F.3d 9, 17 (1st Cir. 2006).

In the absence of direct evidence of age discrimination, analysis of an ADEA claim consists of the following burden shifting framework.  First, to establish a *prima facie* case of age discrimination, an ADEA claimant must adduce evidence that: (1) she was at least forty years of age; (2) her job performance met the employer's legitimate expectations; (3) the employer subjected her to an adverse employment action; and (4) the employer did not treat

CIVIL NO. 08-1302 (JP)          -27-

age neutrally. Hoffman, 439 F.3d at 17 (citing González v. El Día, Inc., 304 F.3d 63, 68 (1st Cir. 2002)).

The *prima facie* showing creates a rebuttable presumption that the defendant-employer violated the ADEA. González, 304 F.3d at 69-70. After the creation of such a presumption, the burden of production shifts to the defendant-employer to articulate "a legitimate, nondiscriminatory basis for its adverse employment action." Id. at 70. If the employer meets this burden then the plaintiff must demonstrate that the employer's articulated reason is mere pretext for discriminatory animus. Id.

In the instant case, Plaintiff Díaz satisfies the first element of the ADEA *prima facie* showing because she was forty-one years old in 2006 when she alleges she was subjected to discrimination. With regard to the second element, Plaintiff's job performance, our discussion above in the context of Plaintiff's Title VII claim applies. Although Plaintiff's performance was inconsistent, there is at least a triable issue as to whether she continued to perform at a satisfactory level.

As with Plaintiff's Title VII claim, her ADEA claim fails on the third element of her *prima facie* case because the record does not support a finding that she was subjected to an adverse employment action. "Adverse employment action, for purposes of the ADEA, includes actual or constructive discharge." Torrech-Hernández v. General Elec. Co., 519 F.3d 41, 50 (1st Cir. 2008). Plaintiff's

CIVIL NO. 08-1302  (JP)          -28-

allegations of adverse employment action in the context of her ADEA
claim are the same as those raised in her Title VII claim.   As
discussed above, the evidence does not support a finding that
Plaintiff's salary, quota, account assignments, or treatment by
supervisors constituted a material change in the conditions of
Plaintiff's employment, let alone a change severe enough to be
considered a constructive discharge.   Because Plaintiff has not
offered evidence upon which a jury could find an adverse employment
action, the Court will grant summary judgment for Defendant on
Plaintiff's ADEA claim.

###     C.    **Plaintiff's EPA Claim**

Defendant Ricoh moves for summary judgment on Plaintiff's EPA
claim, arguing that the evidence in the record cannot support a
finding that the compensation packages provided by Ricoh to its
salespeople are disproportionately favorable to male employees.  The
EPA prohibits an employer from discriminating:

> . . . between employees on the basis of sex by paying
> wages to employees in such establishment at a rate less
> than the rate at which he pays wages to employees of the
> opposite sex in such establishment for equal work on jobs
> the performance of which are performed under similar
> working conditions, except where such payment is made
> pursuant to (i) a seniority system; (ii) a merit system;
> (iii) a system which measures earnings by quantity or
> quality of production; or (iv) a differential based on any
> other factor other than sex.

29 U.S.C. § 206(d)(1).

CIVIL NO. 08-1302 (JP)          -29-

To prevail on a claim under the EPA, a plaintiff must first establish a *prima facie* case by showing that the employer paid different wages to specific employees of different sexes for jobs performed under similar working conditions and requiring equal skill, effort and responsibility.  Ingram v. Brink's, Inc., 414 F.3d 222, 232 (1st Cir. 2005) (internal citation omitted).  Such a showing is harder to make than the *prima facie* showing under the McDonnell Douglas framework applicable to Title VII, because it requires the plaintiff to identify specific employees of the opposite sex holding positions requiring equal skill, effort and responsibility under similar working positions who were more generously compensated.  Id.

In the instant case, Plaintiff argues that Ricoh systematically compensated male salespeople with higher base salaries and commissions than similarly situated female salespeople.  Even viewed in the light most favorable to Plaintiff, the evidence does not support a finding of a pattern of unequal compensation.  During the four years preceding Plaintiff's complaint, her base salary was equal to or higher than that of some of her male colleagues.  Specifically, during fiscal year 2004-2005 Díaz's salary was the same as that of Juan Verdejo and Rafael Rodriguez.  In 2005-2006, Díaz's salary was the same as that of José Otero.  In 2006-2007, Díaz's salary was higher than that of José Otero and the same as

CIVIL NO. 08-1302 (JP)          -30-

Gilberto Cedeño.  In 2007-2008, Díaz's salary was the same as that of José Otero and Gilberto Cedeño.

Aside from direct comparisons of the amounts earned by each salesperson, Plaintiff also argues that her position in the lower third of earners was not based on merit.  Instead, Plaintiff asserts that Ricoh's compensation favors men rather than the highest performers.  Here, again, the undisputed evidence does not support Plaintiff's allegations.  During the four years preceding the filing of the complaint, Plaintiff's division within Ricoh, the GSD, had between ten and twelve sales representatives.  Out of that group, the top performing salesperson has been the top earning salesperson during three of the four years.  Moreover, female salespeople with successful records of achievement regularly earn more than their male colleagues with less sales.  For example, during fiscal year 2005-2006, Evelyn Torres earned more than seven of her male coworkers.  During 2006-2007, another female salesperson, Iniabeliz Álvarez, earned more than five of her male peers.

Plaintiff has failed to raise a genuine factual issue as to the allegation that Ricoh disproportionately compensates male salespeople by comparison with equal performing female salespeople. Accordingly, the Court will grant summary judgment in favor of Defendant on Plaintiff's EPA claim.

CIVIL NO. 08-1302 (JP)          -31-

### D.   **Plaintiff's Puerto Rico Law Claims**

Plaintiff brought Puerto Rico Law claims pursuant to P.R. Laws Ann. tit. 29, § 146 *et seq.* ("Law 100"); P.R. Laws Ann. tit. 29, § 1321 *et seq.* ("Law 69"); P.R. Laws Ann. tit. 29, § 194 *et seq.* ("Law 115"); and Article 1802 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, § 5141.   Having dismissed Plaintiff's federal claims, the Court declines to exercise jurisdiction over the remaining Puerto Rico law claims.   See Marrero-Gutiérrez v. Molina, 491 F.3d 1, 7-8 (1st Cir. 2007) (affirming district court's decision to decline jurisdiction over state law claims after dismissing federal claims).   The Court will enter judgment dismissing Plaintiff's Puerto Rico law claims without prejudice.

## IV.   **CONCLUSION**:

In conclusion, Defendant Ricoh's motion for summary judgment is **GRANTED.**   The Court will enter judgment dismissing Plaintiff's Title VII, ADEA, and EPA claims with prejudice and dismissing Plaintiff's Puerto Rico law claims without prejudice.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 7th day of October, 2009.

                              s/Jaime Pieras, Jr.
                            JAIME PIERAS, JR.
                         U.S. SENIOR DISTRICT JUDGE